# BROWN v. HIGHT.

---

### CONTRACTS; ASSIGNMENTS; EQUITY.

Where a party in a bad mental and physical condition, and in need of the necessaries of life, and who was entitled to a fund of over $2,000 upon the death of his uncle, a man sixty-six years of age and in feeble health, received $275 from a money lender upon signing two papers, one an absolute assignment of his reversionary interest in the fund, and the other a receipt for the money, which recited that it was a loan, and that, if it was repaid within one year, the lender would convey to the borrower a lot in Baltimore, which the latter had never seen, and which was worth about $450, and within the year and at a time when the lender had learned the age of the uncle, and that he was in bad health, and that there were judgments

against the borrower, and shortly before the uncle's death, the lender tendered to the borrower a deed of the lot upon condition of the repayment of the $275, which tender was refused, and within the same period the lender was tendered on behalf of the borrower the $275 with interest, and refused it, it was *held* that the transaction was a loan, and that the lower court should decree that the lender, upon receiving the amount of the loan with interest, should surrender the assignment for cancelation.

No. 1976. Submitted March 5, 1909. Decided April 13, 1909.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, directing an executrix and trustee to pay over to the complainant a fund in their hands with accretions.                *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from the supreme court of the District, directing the defendant, Alida Catherine Brown, one of the appellants here, as executrix of the defendant trustee, John Marshall Brown, to pay over to the complainant, Clarence B. Hight, or to his solicitor, $2,352.37, with its accretions. Under the will of Mrs. Sally Carroll, deceased, her executors, of whom John Marshall Brown alone qualified, were directed to hold in trust $10,000, the income to be paid to her son, Charles H. Carroll, and at his death $3,000 was directed to be paid to Carroll Mercer, a grandson of the testatrix, and the remaining $7,000 was directed to be paid to another grandson, John Francis Mercer. The legacy abated to the sum of $7,841.24, owing to the insufficiency of the assets of the estate. The annuitant, Charles H. Carroll, died on or about January 14, 1906, and the proportionate share of said Carroll Mercer of said bequest, which was payable upon the death of the annuitant, was the sum of $2,352.37, the amount directed to be paid the complainant by the decree from which this appeal is prosecuted.

Upon the filing of the bill the defendant, John Marshall Brown, made answer under oath, and subsequently an answer under oath was filed by said Carroll Mercer, leave of court to

intervene having been obtained. Thereupon testimony was taken, and the cause heard upon the bill, answers, and testimony.

Mercer, at the time of the transaction out of which this suit grew, was a wreck of his former self. Formerly he had been surrounded by everything that wealth and social distinction could secure, but his habits wrought a complete change in his situation and left him alone and practically penniless. His condition was such that the only work he was able to secure was in a real estate office at a salary of $7 a week, where his duties consisted of directing envelopes to friends of his prosperous days. Even this position he was unable long to hold, so complete was his downfall: While he was holding this position, and in such a condition mentally and physically that several reputable witnesses testified he was absolutely incapable of transacting business, he applied to one Baker to secure him a loan on his expectancy in said bequest. Thereupon on October 10, 1905, at Baker's suggestion, he addressed a communication to F. D. McKenney, Esq., who represented the executor in the District of Columbia, asking for information concerning the age, condition of health, and residence of said annuitant, Charles H. Carroll, and also as to the amount he, Mercer, would receive at the time of said Carroll's death. On the same day Mr. McKenney wrote him that, at the death of his uncle, Mr. Charles H. Carroll, $2,352.24 would become his own, but that he had no information as to the whereabouts of Mr. Carroll, nor "as to his age nor present condition of health." Baker, having had several business transactions with the complainant, Hight, says he approached him with a view of selling him Mercer's interest in said bequest. The evidence is not clear as to the length of time covered by the negotiations with complainant, but it does appear from both complainant's and Baker's testimony, that just prior to November 11, 1905, Baker was given $100 by complainant and directed "to go ahead and make the deal" with Mercer; that thereupon on said November 11th Baker gave Mercer $75 out of the $100 and secured his signature to the following paper:

November 11, 1905.

For value received I assign all my right, title, and interest in the estate of the late Sally S. Carroll, the said interest consisting of a three sevenths interest in a certain deed of trust given on the property known as 1801 E Street Northwest, Washington, District of Columbia, the said deed of trust having been given by Hon. M. W. Fuller and Mary E. Fuller, his wife, to secure the payment of $7,841.24. My interest in the above deed of trust, amounting to three sevenths of the above amount, I assign to C. B. Hight in consideration of the payment of $75 in hand this day paid me by his authorized agent, N. H. Baker. The said C. B. Hight agrees to deed to whomsoever I may designate a deed for a certain lot located on Raynor avenue, Baltimore, Maryland, and also agrees to loan me in addition to the sum received from N. H. Baker a further amount of $425, the said five hundred dollars to be secured to the C. B. Hight by a first deed of trust on the Raynor avenue lot.

It is understood that the said interest that I am here selling is sold subject to a life estate in the said trust given by M. W. Fuller and wife. The said life interest being held by my uncle, Charles Carroll, who was born in the year 1839.

In witness to the above I set my hand and seal.
Witness:                    Carroll Mercer. (Seal.)
    N. H. Baker.


Baker, who is complainant's witness, swears he submitted this paper to complainant, who thereupon in substance stated that Baker had misunderstood him; that he was unwilling to advance more than $275 in the deal; and that he preferred to lose what he had already put in rather than advance more than that sum. Thereupon Baker procured Mercer to execute the following papers:


This agreement, made this 16th day of November in the year

one thousand nine hundred and five by and between Carroll Mercer of the city of Washington, District of Columbia, party of the first part, and Clarence B. Hight, of the same place, party of the second part:

Whereas, the said Hight has this day loaned to the said Mercer the sum of two hundred and seventy-five dollars ($275) the receipt of which the said Mercer hereby acknowledges.

Now, therefore, the said Hight hereby agrees, upon repayment of the said sum of two hundred and seventy-five dollars ($275) with interest at the rate of 6 per cent from date to the time of said repayment, provided same shall occur within the period of twelve months from the date hereof, and in that event only, to deed to the said Mercer in fee simple and without encumbrance of any sort,

The lot of ground situate, lying, and being in Baltimore city, State of Maryland, and described as follows: (Here follows a description of the premises)

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Witness, the hand and seals of the parties hereto, this day and year first above written.

Carroll Mercer.　(Seal.)

Test:　　　　　　　　Clarence B. Hight.　(Seal.)

Nathan H. Baker.

I, Carroll Mercer, of the city of Washington, District of Columbia, being one of the legatees named in the last will and testament of my grandmother, Sally S. Carroll, whose will is duly recorded in the office of the register of wills in said District, do hereby, for good and valuable consideration, the receipt whereof at and before the signing and delivery of these presents is hereby acknowledged, sell, assign, transfer, and assign to Clarence B. Hight, of said city and District, all of my right, title, and interest in and to the legacy bequeathed to me by the said Sally S. Carroll by her said last will and testament.

In testimony whereof I have hereunto set my hand and affixed my seal this 16th day of November, A. D. 1905.

Carroll Mercer.  (Seal.)

Witness:

P. J. Walshe.

(This assignment was duly acknowledged before a Notary Public.)

Complainant and Mercer never met, Baker acting as the intermediary.  Complainant's testimony is to the effect that, when he was approached by Baker, he offered to exchange the Baltimore property for Mercer's interest in said bequest, and to loan something on said Baltimore lot, and that such was the arrangement evidenced by the papers that were finally executed. The appellants, on the other hand, contend that the transaction constituted nothing more than a loan from complainant to Mercer in the sum of $275, which was to be repaid with interest on or about December 16, 1906.

*Mr. Frederick D. McKenney, Mr. J. Spalding Flannery,* and *Mr. William Hitz* for the appellants.

*Mr. P. A. Bowen, Jr.,* and *Mr. H. S. Matthews* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

The agreement and assignment of November 16th were concurrently executed, were in consummation of the same transaction, and must be read together in reaching a determination as to their import and meaning.  Reading them together in the light of the surrounding circumstances, we think it reasonably clear that they evidence a loan from complainant to Mercer, and not an exchange and loan, as contended by complainant.  Mercer was in such financial straits that he almost lacked bread. He wanted money, not land.  He knew nothing whatever about the Baltimore property, never having seen it and never having

made any investigation concerning it. This property belonged to the wife of complainant, and the title remained in her continuously thereafter.. Complainant testified that he considered it worth $1,000 *to him,* but the record shows that in 1904 its value was fixed in partition proceedings at $450. The complainant, on December 19, 1906, tendered to Mr. McKenney, as the representative of Mercer, a deed from his wife and himself, dated November 14, 1905, *but not acknowledged until November 15, 1906,* purporting to convey to said Mercer the Baltimore lot. The tender was made upon condition of the repayment of the sum named in said agreement of November 16, 1905. At the time of this transaction the complainant knew the amount that would be paid to Mercer upon his uncle's death, and he knew that the uncle was then sixty-six years old, for Baker had ascertained that fact and imparted the information to complainant. Since that information was not obtained through Mr. McKenney, it follows that it was obtained from some other source. It is stated in the answers that the annuitant was then in feeble health, and, considering the time that intervened between the 10th of October, when Mercer wrote to Mr. McKenney for information, and the time the transaction was consummated, it is quite likely that complainant had become fully informed as to the annuitant's condition. It is true he testifies that he had no knowledge concerning the matter, but the evidence of Baker and ·the surrounding circumstances are inconsistent with his recollection. He does admit, however, that he knew that there were outstanding judgments against Mercer, and it appears that he obtained the advice of his attorney as to whether or not an assignment of Mercer's interest in said bequest would be good as against those judgments. Why should he be willing to loan $275 on the Baltimore lot, which, according to his present contention, he exchanged for the legacy, when he was unwilling to loan that or any other amount on the legacy? Surely, being a man of business, he considered the legacy of greater value than the lot, else he would not have exchanged at all. We think the reason quite apparent. Having learned of the judgments against Mercer, he was unwilling to

incur the risk of litigation by attempting to loan anything on the strength of the legacy unless he had what purported to be on its face an absolute assignment of that legacy. The Baltimore property, which, of course, was of no more use to Mercer than his legacy, was resorted to as a convenient expedient or device to secure the safety of the loan. It will be noticed that under the agreement, if Mercer repaid the loan within one year, he was to receive a deed to the Baltimore lot. If complainant was willing to surrender the Baltimore lot within one year upon the repayment of the loan, why should he have been unwilling to surrender the assignment to the legacy? The paper of November 11th was drawn by Baker, and contains both the assignment of the legacy and the agreement concerning the Baltimore property, showing still more clearly that the Baltimore property was a mere makeshift in the transaction.

At the time complainant made this loan, each dollar of Mercer's reversionary interest in said bequest, according to standard mortality tables, was worth .67212 of a dollar, making the total value of his interest at that time $1,581.07. Taking into consideration the fact that the annuitant had been in feeble health for many years, the then present worth of the reversionary interest was, of course, much greater. It is apparent, therefore, that complainant, knowing the situation and condition of Mercer, was led to believe that the loan would not be repaid within the year, and that, therefore, the assignment would become at the expiration of that period in fact as well as in form absolute. It was undoubtedly this consideration that induced complainant to make the loan. The death of the annuitant within a year changed the situation, but apparently in no wise abated the desire of complainant to obtain $2,352 by the expenditure of $275.

Within one year from the date of said agreement of November 16th complainant was tendered in behalf of Mercer $275, and interest thereon at 6 per cent, amounting to $291.50, which was refused. The defendant Brown and the intervener Mercer in their answers tender themselves as ready and willing to pay said sum upon the order of the court, and we think it was

error for the trial court not to direct complainant, upon receiving said sum, to cancel and surrender up said assignment of November 16th.

This view renders it unnecessary to consider the question whether equity would lend its aid to the carrying out of a transaction of the character of that involved here, even though the complainant's construction of said agreement be accepted.

For the reasons given the decree will be reversed, with costs, and the cause remanded for further proceedings.    *Reversed.*